**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
SHIVA STEIN,                                   :
                                               :
            Plaintiff,                         :   Civil Action No. 1:21-cv-7108
                                               :
v.                                             :
                                               :   COMPLAINT FOR VIOLATIONS OF
STAMPS.COM INC., KENNETH T.                    :   SECTIONS 14(a) AND 20(a) OF THE
MCBRIDE, MOHAN P. ANANDA, DAVID                :   SECURITIES EXCHANGE ACT OF
C. HABIGER, G. BRADFORD JONES,                 :   1934
KATIE ANN MAY, and THEODORE R.                 :
SAMUELS, II,                                   :   JURY TRIAL DEMANDED
                                               :
            Defendants.                        :
--------------------------------------------------------
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Stamps.com Inc. ("Stamps.com or the "Company") and the members Stamps.com board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Stamps.com by Thoma Bravo, L.P. ("Thoma Bravo") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on August 19, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Stream Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Stream Parent, LLC ("Parent"), will merge with and into Stamps.com with Stamps.com surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are entities affiliated with Thoma Bravo, a private equity investment firm. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Stamps.com common share issued and outstanding will be converted into the right to receive $330.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Stamps.com stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Stamps.com stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a portion of the wrongs occurred in this District. In addition, the proxy solicitor of the Company, and the legal advisor of the Company for the Proposed Transaction, D.F. King & Co., Inc., and Proskauer Rose LLP, respectively, are headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Stamps.com common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Kenneth T. McBride has served as a member of the Board since August 2001 and is the Company's Chairman and Chief Executive Officer.

11.     Individual Defendant Mohan P. Ananda has served as a member of the Board since 1998.

12.     Individual Defendant David C. Habiger has served as a member of the Board since 2016.

13.     Individual Defendant G. Bradford Jones has served as a member of the Board since 1998.

14.     Individual Defendant Katie Ann May has served as a member of the Board since March 2019.

15.     Individual Defendant Theodore R. Samuels, II has served as a member of the Board since 2017.

16.     Defendant Stamps.com is incorporated in Delaware and maintains its principal offices at 1990 E. Grand Avenue, El Segundo, California 90245.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "STMP."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

19.     Stamps.com Inc. provides Internet-based mailing and shipping solutions in the United States and Europe. It operates in two segments, Stamps.com and Metapack. The Company offers mailing and shipping solutions to mail and ship various mail pieces and packages through the United States Postal Service (USPS) under the Stamps.com, Endicia, Metapack, ShippingEasy, ShipEngine, ShipStation, and ShipWorks brands. Its solutions support various USPS mail classes, including First Class Mail, Media Mail, Parcel Select, Priority Mail, Priority Mail Express, and others. The Company's USPS mailing solutions enable customers to print electronic postage on

labels, envelopes, postcards, paper, and customs forms using personal computing device, printer, and Internet connection. It also provides multi carrier shipping solutions; consolidation services; back-end integration solutions comprising electronic postage for transactions to partners who manage the front-end users; and branded insurance for packages. In addition, the Company offers customized postage solutions under the PhotoStamps brand, which allow consumers to turn digital photos, designs, or images into USPS-approved postage; and sells NetStamps labels, shipping labels, mailing labels, postage printers, scales, and other mailing and shipping-focused office supplies through its mailing and shipping supplies stores. It serves small businesses, home offices, medium-size businesses, large enterprises, e-commerce merchants, large retailers, and shippers. The Company was formerly known as StampMaster, Inc. and changed its name to Stamps.com Inc. in December 1998. Stamps.com Inc. was founded in 1996 and is headquartered in El Segundo, California.

20.    On July 9, 2021, Stamps.com and Thoma Bravo jointly announced that they had entered into a proposed transaction:

> EL SEGUNDO, Calif. & SAN FRANCISCO--(BUSINESS WIRE)-- Stamps.com® (NASDAQ: STMP) (the "Company"), a leading provider of e-commerce shipping solutions, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values Stamps.com at approximately $6.6 billion.
>
> Under the terms of the agreement, Stamps.com stockholders will receive $330.00 per share in cash representing a premium of 67 percent over the Company's closing share price on July 8, 2021, the last full trading day prior to the transaction announcement. The premium is 71 percent over the Company's three-month volume-weighted average closing share price through July 8, 2021. Upon completion of the transaction, Stamps.com will become a private company with the flexibility and resources to continue to provide best-in-class global e-commerce technology solutions. Additionally, Stamps.com will benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most

experienced and successful software and technology investors in the world.

"Today's announcement marks a significant milestone in the history of Stamps.com and will provide us with a new and exciting platform from which we can continue to execute our global strategy driven by best-in-class software and technology solutions," said Ken McBride, Stamps.com's Chairman and CEO. "With the financial and operational support of Thoma Bravo, Stamps.com can continue to innovate and pursue growth opportunities to capture the expanding e-commerce shipping market and extend our position as the leading global multi-carrier e-commerce shipping software company. This transaction is a testament to the excellence and hard work of all of our employees and their relentless dedication to our customers and partners throughout the world."

"As the first company to introduce online postage and an early innovator in e-commerce shipping software, Stamps.com has established itself as a key technology solution in worldwide e-commerce," said Holden Spaht, a Managing Partner at Thoma Bravo. "With a highly-seasoned management team that has driven impressive growth for more than twenty years, an innovative suite of market-leading software solutions, and a large and growing customer base, Stamps.com is well positioned to capitalize on the strong secular tailwinds in e-commerce and we are excited to support the Company in its next chapter of growth."

"We've been tracking the impressive growth of Stamps.com for many years and are excited to partner with the Stamps.com team to support the Company in continuing to drive cutting edge product innovation, expansion into new markets, and delivery of an even greater level of service and support to its impressive customer base," said Brian Jaffee, a Principal at Thoma Bravo. "The e-commerce landscape is rapidly evolving and we look forward to partnering with the Stamps.com team to continue building on the Company's leading position in e-commerce shipping solutions."

**Transaction Details**
Stamps.com's Board of Directors (the "Board") has unanimously approved the agreement with Thoma Bravo and recommends that Stamps.com stockholders vote in favor of the transaction at the Special Meeting of Stockholders to be called in connection with the transaction.

The agreement includes a 40-day "go-shop" period expiring August 18, 2021 which allows the Board and its advisors to actively initiate,

solicit and consider alternative acquisition proposals from third parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Stamps.com does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

The transaction is expected to close in the third quarter of 2021, subject to customary closing conditions, including approval by Stamps.com stockholders and receipt of regulatory approvals. Upon closing of the transaction, the Company's common stock will no longer be listed on any public market. The Company will continue to be headquartered in El Segundo, California.

**Advisors**
J.P. Morgan Securities LLC is acting as exclusive financial advisor to Stamps.com and Proskauer Rose LLP is acting as its legal counsel. Debt financing for the transaction is being provided by Blackstone Credit, credit funds managed by Ares Management Corporation, PSP Investments Credit II USA LLC and Thoma Bravo Credit. Kirkland & Ellis LLP is serving as legal advisor for Thoma Bravo.

\* \* \*

21.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Stamps.com's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

22.     On August 19, 2021, Stamps.com filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Stamps.com's Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial projections by Stamps.com management and relied upon by the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Stamps.com management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBIT, EBIAT, and Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a

reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

28.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the range of terminal asset values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 3.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9% to 10%; and (iv) the weighted average cost of capital of the Company.

29.     With respect to J.P. Morgan's *Analyst Price Targets for Stamps.com* analysis, the Proxy Statement also fails to disclose: (i) the individual multiples and metrics for the transactions observed by J.P. Morgan in the analysis.

30.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

34.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

35.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

36.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     The Individual Defendants acted as controlling persons of Stamps.com within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Stamps.com, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Stamps.com, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Stamps.com, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

41.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 23, 2021                              **MELWANI & CHAN LLP**

                                        By:  /s *Gloria Kui Melwani*
                                             Gloria Kui Melwani (GM5661)
                                             1180 Avenue of Americas, 8th Fl.
                                             New York, NY 10036
                                             Telephone: (212) 382-4620
                                             Email: gloria@melwanichan.com

                                             *Attorneys for Plaintiff*